UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM FORD, VERONICA FORD,<br><br>    Plaintiffs,<br><br>  v.<br><br>WELLS FARGO HOME MORTGAGE, WELLS FARGO BANK, N.A., ELIZABETH A. MARQUEZ AND DOES 1 THROUGH 50,INCLUSIVE,<br><br>    Defendants. | Case No. 08-4276 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO'S <u>MOTION TO DISMISS</u> |

**I.  INTRODUCTION**

The underlying action arises out of a mortgage loan agreement executed in 2005. The present matter comes before the Court on the Motion to Dismiss ("Motion") filed by the defendants Wells Fargo Home Mortgage, Wells Fargo Bank, N.A. (collectively "Wells Fargo") and Elizabeth A. Marquez (with Wells Fargo, "Defendants"). Docket No. 6. The plaintiffs William and Veronica Ford (the "Fords" or "Plaintiffs") filed an Opposition and Wells Fargo submitted a Reply. Docket Nos. 12, 13. For the following reasons, Wells Fargo's Motion is GRANTED IN PART and DENIED IN PART.

**II.  BACKGROUND**

The following allegations are taken from the Fords' Complaint. In August or September of 2005, the Fords were

solicited by Defendant Marquez, who was working as a loan officer and/or broker for Defendant Wells Fargo. Notice of Removal, Docket No. 1, Ex. A ("Compl.") ¶ 18. Defendant Marquez allegedly coerced the Fords into refinancing the mortgage on their home, located at 2203 Banyan Way, Antioch, California. Id. ¶¶ 18, 19. Marquez allegedly told the Fords that they could afford the new loan by misrepresenting, among other things, the amount of the monthly payments, the interest rate, whether the rate would be fixed or variable, and the value of the Fords' home at the time their mortgage was refinanced. Id. ¶¶ 19, 20. The Fords concede that on September 15, 2005, they received the loan documents. Id. ¶ 28. These documents, according to Plaintiffs, "contained . . . conflicting terms of the loan, including but not limited to conflicting interest rate and repayment information." Id. ¶ 28.

In January 2008, the Fords sent Wells Fargo a letter of rescission. Id. ¶ 32. At the time, the Fords were current on all payments on the loan. Id. Beginning in February 2008, the Fords became unable to make their payments under the loan and subsequently received a number of Notices of Default from Wells Fargo. Id. ¶ 39. On August 7, the Fords filed an action in the Superior Court of California in the County of Contra Costa. Defendants were served on August 13 and timely removed the action to this Court on September 10. Notice of Removal at 2. In their Complaint, Plaintiffs allege the following causes of action: violations of the Homeowner's Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; fraud, deceit and misrepresentation; negligent

1 misrepresentation and respondeat superior; and breach of fiduciary
2 duty.

### III. LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). For purposes of such a motion, the complaint is construed in the light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. Id. Unreasonable inferences or conclusory legal allegations cast in the form of factual allegations, however, are insufficient to defeat a motion to dismiss. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### IV. REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, the Court addresses Defendants' unopposed Request for Judicial Notice. ("RJN") Docket No. 6. Defendants ask the Court to take notice of two documents, the first of which is the original deed of trust securing Defendants' loan to the Fords' property. The deed was recorded with the County Recorder of Contra Costa County in California on September

15, 2005. Id. Ex. A ("Deed of Trust"). The listed borrowers are William and Veronica Ford, the listed lender is Wells Fargo Bank, and the secured property is identified as 2203 Banyan Way, Antioch, California. Deed of Trust at 3. The second document, titled "Trustee's Deed Upon Sale," is the deed conveyed to HSBC Bank when the Fords' property was bought by HSBC at a foreclosure sale on August 5, 2008. RJN Ex. B ("Deed Upon Sale"). As stated in this document, the foreclosure sale was "made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 9/15/2005 and executed by William Ford [and] Veronica Ford." Id. at 1.

"When ruling on a 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)). "A court may, however, consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." Id. at 908. Thus, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a

4

1 motion to dismiss under Rule 12(b)(6)." Id. This "incorporation
2 by reference doctrine" has been extended "to situations in which
3 the plaintiff's claim depends on the contents of a document, the
4 defendant attaches the document to its motion to dismiss, and the
5 parties do not dispute the authenticity of the document, even
6 though the plaintiff does not explicitly allege the contents of
7 that document in the complaint." Knievel v. ESPN, 393 F.3d 1068,
8 1076 (9th Cir. 2005).

9 In the present case, the incorporation by reference doctrine
10 permits the Court to consider both documents submitted by
11 Defendants in their RJN. Not only does the Fords' Complaint
12 depend on the contents of these documents, but both documents are
13 part of the public record and are easily verifiable. See
14 Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992)
15 (holding that "[i]n federal courts, notice may be taken of facts
16 relating to the particular case . . . where the fact is 'not
17 subject to reasonable dispute,' either because it is 'generally
18 known within the territorial jurisdiction,' or is 'capable of
19 accurate and ready determination by resort to sources whose
20 accuracy cannot reasonably be questioned'") (citing Fed. R. Evid.
21 201(b)).

**V.    DISCUSSION**

The Court addresses Defendants' arguments in the order they were presented.

///
///

5

1  **A.   Third and Fourth Causes of Action for Rescission and**
2  **Injunctive Relief**

3  Plaintiffs' third cause of action seeks rescission of the
4  mortgage loan.  Defendants argue that this claim fails because the
5  right of rescission terminates upon sale of the secured property
6  and Plaintiffs' home was sold in a foreclosure sale to HSBC on
7  August 5, 2008.  Violations of TILA requirements give rise to
8  remedies of both rescission and damages.  For rescission, TILA
9  provides for an initial three-day period during which consumers
10 have an unconditional right to cancel the loan transaction for any
11 reason.  15 U.S.C. § 1635(a).  Where the creditor fails to provide
12 to the consumer a notice of right to rescind and all material
13 disclosures, TILA implementing Regulation Z provides that "the
14 right to rescind shall expire 3 years after consummation, upon
15 transfer of all of the consumer's interest in the property, or
16 upon sale of the property, whichever occurs first."  12 C.F.R. §
17 226.23.  Plaintiffs argue that this language only applies to
18 situations where a borrower voluntarily sells his or her home and
19 is inapplicable when the borrower's home is sold through
20 foreclosure proceedings.

21 The language of § 226.23 does not distinguish between
22 voluntary and involuntary sales.  Recent Ninth Circuit authority
23 involving § 226.23 only addressed the situation where borrowers
24 voluntarily sold their home.  See Meyer v. Ameriquest Mortgage
25 Co., 342 F.3d 899, 902 (9th Cir. 2003) (holding "[o]nce the Meyers
26 sold their home, took control of the loan proceeds and paid off
27 the loan, the TILA rescission provision no longer applied and only

6

the damages provision remained as a cause of action"); see also id. at 903 (stating "[t]he regulation is clear: the right to rescind ends with the sale"). Other courts that have examined this issue, however, have concluded that an involuntary foreclosure sale, like any other sale, terminates TILA's right of rescission. See, e.g., Worthy v. World Wide Fin. Servs., Inc., 347 F. Supp. 2d 502, 507 (E.D. Mich. 2004) (stating the "language of the statute . . . does not provide Plaintiff with a right to rescind the mortgage transaction after the foreclosure auction"); In re Walker, 232 B.R. 725, 732 (Bankr. N.D. Ill. 1999) (holding "[o]nce there has been a final foreclosure sale of the borrower's principal residence and the redemption period has expired, the right to rescind will be terminated"); Metcalf v. Drexel Lending Group, No. 08-CV-0731, 2008 WL 2682851, at *2 (S.D. Cal. July 3, 2008) (noting "Plaintiff's claim for rescission also appears barred because the foreclosure sale already occurred").

In addition, the Official Staff Commentary to Regulation Z, which was promulgated by the Board of Governors of the Federal Reserve System to implement TILA, also states that a "sale or transfer of the property need not be voluntary to terminate the right to rescind the transaction." Official Staff Commentary to Reg. Z, 12 C.F.R. § 226.23(a)(3). For these reasons, the Court concludes that rescission is no longer available to Plaintiffs under Regulation Z. Plaintiffs' third cause of action is DISMISSED with prejudice, as amendment cannot cure this deficiency.

In their fourth cause of action, Plaintiffs seek a

7

1 preliminary injunction halting the foreclosure sale of their home.
2 This sale, however, has already occurred.  The Court is therefore
3 powerless to enjoin it.

### B. First and Second Causes of Action for Damages Under TILA and HOEPA

Plaintiffs' first and second causes of action seek damages for various violations of TILA and HOEPA.  Defendants argue that these claims are time-barred by TILA's one-year statute of limitations.  Section 1640(e) of TILA provides that "[a]ny action under this section may be brought within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  The Ninth Circuit has held that this one year period "runs from the date of consummation of the transaction."  King v. California, 784 F.2d 910, 915 (9th Cir. 1986).

In their Opposition, Plaintiffs mistakenly argue that the one-year time limit is inapplicable because "Plaintiffs' right to rescind the loan extends to three years under TILA."  Opp'n at 3. As discussed above, it is undisputed that the right to rescind may survive for up to three years after the loan is consummated.  See 12 C.F.R. § 226.23 (stating "the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").  Plaintiffs' first two causes of actions, however, seek damages under TILA and HOEPA.  See Compl. ¶¶ 52, 57. Plaintiffs conflate the time limits for rescission and damages under TILA and argue, without support, that the three-year limit for rescission also applies to claims for damages.  As the

8

language from both 15 U.S.C. § 1640(e) and 12 C.F.R. § 226.23 makes clear, such is not the case. See also King, 784 F.2d at 914 (stating "the one-year limitation applies only to damages actions; rescission is available for three years").

Plaintiffs also argue that because Wells Fargo failed to make "material disclosures, the statute of limitations does not apply to TILA or HOEPA in this case." Opp'n at 3. This argument is plainly contradicted by TILA itself and by existing caselaw. See, e.g., King, 784 F.2d at 913 (holding that where the plaintiff brought a claim for damages under TILA for failure to disclose, § 1640(e) provided the relevant statute of limitations).

It is undisputed that the Fords executed their refinanced loan on September 15, 2005, and filed their lawsuit in state court on August 7, 2008. See Deed of Trust at 1; Compl. at 1. The one-year time limit of § 1640(e) had therefore elapsed. This does not, however, end the analysis.

The Ninth Circuit has recognized that "an inflexible rule that bars suit one year after consummation is . . . inconsistent with legislative intent." King, 784 F.2d at 914. Although TILA "may impute to borrowers knowledge of their rights as consumers of credit, there may be situations in which a borrower consummates his loan and passes a year without knowing of the lender's fraud or nondisclosures." Id. Thus, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." Id. at 915.

9

In the present case, Plaintiffs do not argue equitable tolling in their Opposition. Nonetheless, factual allegations in the Complaint, construed in a light most favorable to Plaintiffs, might give rise to tolling of the statute. See, e.g., Compl. ¶ 20 (stating "[t]he new loan paperwork misrepresented the amount of the current appraisal on the property. . . . None of the facts were made known and/or disclosed to the Plaintiffs until well after the fact when the increases in the payments on the loan started to take place.") Given that the Adjustable Rate Rider in the Deed of Trust states Plaintiffs' interest rate "may change on the first day of October, 2007," it is possible, however unlikely, that Plaintiffs, "despite all due diligence, [were nevertheless] unable to obtain vital information bearing on the existence of [their] claim[s]."[1] Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000).

"Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006). Although Plaintiffs' claims for damages under TILA and HOEPA were brought outside the applicable statute of limitation, dismissal is not possible as Plaintiffs have alleged facts that might give rise to equitable tolling. Defendants'

---

[1] Although the Deed of Trust lists October 1, 2007, as the date when Plaintiffs' interest rate might have begun to change, Plaintiffs, in their Opposition, state "[t]he first increased payment occurred on September 1, 2007." Worth noting, this discrepancy nonetheless has no impact on the Court's analysis.

10

1 Motion is DENIED with respect to Plaintiffs' first and second
2 causes of action.

### C. Sixth Cause of Action for Negligent Supervision

Plaintiffs' sixth claim is for negligent supervision against Wells Fargo and alleges that Wells Fargo's inadequate supervision of Defendant Marquez was the proximate result of Plaintiffs' damages. Compl. ¶ 92. The statute of limitations for a negligent supervision claim is two years. See Unruh-Haxton v. Regents of Univ. of Cal., 162 Cal. App. 4th 343, 357 (Ct. App. 2008); Cal. Civ. Proc. § 335.1. Plaintiffs concede this but argue, in effect, that the limitations period should be tolled because Plaintiffs were not aware of any misrepresentations, and hence negligent supervision, until their payments began to increase in late 2007. Opp'n at 9.

California courts recognize the common law principle of the "discovery rule." "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something to her." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988). Thus, "the limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." Id. at 1110-11 (internal quotation marks omitted). "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim." Id. at 1111. "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." Id. Finally, the plaintiff has the burden of showing that the

11

1  discovery rule applies.

2  In the present case, it is possible, however improbable, that
3  Plaintiffs, in reliance on representations made by Defendants, had
4  no reason to believe that their payments would increase beginning
5  in late 2007.  Thus, for example, although the Deed of Trust
6  states that the interest rate "may change on the first day of
7  October 2007," it is possible that, based on Defendants'
8  representations, Plaintiffs were under a reasonable belief that
9  such a change would not occur or would be much smaller than it
10 actually was.  At this stage of the proceedings, Plaintiffs have
11 alleged sufficient facts such that the Court cannot conclude that
12 the discovery rule does not apply.

13 Defendants also argue that Plaintiffs' claim for negligent
14 supervision fails because Defendants did not owe Plaintiffs a duty
15 of care.  "[A]s a general rule, a financial institution owes no
16 duty of care to a borrower when the institutions's involvement in
17 the loan transaction does not exceed the scope of its conventional
18 role as a mere lender of money."  Nymark v. Heart Fed. Savs. &
19 Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991); see also
20 Wagner v. Benson, 101 Cal. App. 3d 27, 35 (Ct. App. 1980) (stating
21 "[l]iability to a borrower for negligence arises only when the
22 lender actively participates in the financed enterprise beyond the
23 domain of the usual money lender").

24 Plaintiffs have alleged that Defendants "coerced Plaintiffs
25 to enter into a loan agreement by misrepresenting" various
26 material terms.  Compl. ¶ 19.  If proven, this allegation would
27 place Defendants' actions outside the scope of the conventional

12

role as a mere money lender.

For all of these reasons, Defendants' Motion to Dismiss Plaintiffs' sixth cause of action is DENIED.

### D. Seventh Cause of Action for Breach of Fiduciary Duty

Plaintiffs' seventh claim is for breach of fiduciary duty. "In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (Ct. App. 1991). "A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or consent." Id. at 1101-02. "The basic fiduciary obligations are two-fold: undivided loyalty and confidentiality." Id. at 1102 (internal quotation marks omitted).

An example of a typical fiduciary relationship is that of an attorney and client. See Wolk v. Green, 516 F. Supp. 2d 1121, 1130 (N.D. Cal. 2007) (stating "[f]iduciary duty arises in an attorney-client context") (citing Mosier v. S. Cal. Physicians Ins. Exch., 63 Cal. App. 4th 1022, 1044 (Ct. App. 1998). In addition, California courts have held that a real estate agent involved in the sale of a residential property "owes the purchaser a . . . fiduciary duty to act with the utmost care, integrity honesty and loyalty." Leko v. Cornerstone Bldg. Inspection Serv., 86 Cal. App. 4th 1109, 1116 (Ct. App. 2001). Absent special

13

circumstances, however, a lender/borrower relationship typically does not involve a fiduciary duty. See Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 478 (Ct. App. 1989).

In the present case, Plaintiffs have failed to allege any special circumstances that would have elevated the typical borrower/lender relationship to that of a fiduciary relationship. Plaintiffs' Complaint alleges: "Defendants . . . owed Plaintiffs [a] fiduciary duty to properly and faithfully conduct the transaction with reasonable skill, diligence, impartiality and full disclosure of all true facts." Compl. ¶ 95. Other district courts in California have found that similar allegations have been insufficient to show a fiduciary duty. See River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc., 287 F. Supp. 2d 1213, 1224-25 (S.D. Cal. 2003)(finding no fiduciary relationship between lender and borrower despite lender's misrepresentation of terms of loan); Toscano v. Ameriquest Mortgage Co., No. CIV-07-0957, 2007 WL 3125023, at *7 (E.D. Cal. Oct. 24, 2007) (same). For these reasons, Defendants' Motion is GRANTED and Plaintiffs' seventh cause of action is DISMISSED without prejudice. Plaintiffs may amend within 30 days.

### E. Fifth Cause of Action for Fraud

Plaintiffs' fifth cause of action is for fraud, deceit, and misrepresentation. The claim alleges the following:

> Defendants and each of them represented to Plaintiffs that they could afford the newly refinanced loan based on their incomes and asset verification. However, Defendants misstated Plaintiff's [sic] assets by improperly and/or fraudulently listing $125,000 in liquid funds

14

>           purportedly on deposit with Bank of
>           America at the time the loan application
>           was prepared and/or verified by
>           Defendants.  Said statement was false.
>           Defendants further listed real property
>           assets owned by Plaintiffs to be $550,000
>           when in fact the appraised value of the
>           only realty Plaintiffs owned . . . was
>           $400,000.  Defendants further
>           misrepresented to the Plaintiffs the
>           interest rate applied to the loan and the
>           true terms of the loan repayment.

Compl. ¶ 82. Defendants argue that Plaintiffs' fraud claim fails to meet the specificity required by Federal Rule of Civil Procedure 9(b).

"Fraud arises from the plaintiff's reliance on the defendant's false representations of material fact, made with knowledge of falsity and the intent to deceive." Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995).  The Ninth Circuit "has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Neubronner v. Milken, 6 F.3d 666, 671-72 (9th Cir. 1993) (internal quotation marks omitted).  "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Id. at 672.

In the present action, Plaintiffs' fraud allegations fall short of the requisite Rule 9(b) particularity.  For example, Plaintiffs' allegations are devoid of times, dates and places, and do not specify which of the Defendants made the allegedly

15

1 fraudulent statements.

2 "Because a dismissal of a . . . claim grounded in fraud for
3 failure to comply with Rule 9(b) has the same consequence as a
4 dismissal under Rule 12(b)(6), dismissals under the two rules are
5 treated in the same manner," and, "[a]s with Rule 12(b)(6)
6 dismissals, dismissals for failure to comply with Rule 9(b) should
7 ordinarily be without prejudice."  <u>Vess v. Ciba-Geigy Corp. USA</u>,
8 317 F.3d 1097, 1107-08 (9th Cir. 2003).

9 For these reasons, Plaintiffs' claim for fraud is DISMISSED
10 without prejudice.

## VI.  <u>CONCLUSION</u>

13 For the foregoing reasons, Defendants' Motion to Dismiss is
14 GRANTED IN PART and DENIED IN PART.  Defendants' Motion is DENIED
15 with respect to Plaintiffs' first, second, and sixth claims.  The
16 Motion is GRANTED WITH PREJUDICE with respect to Plaintiffs' third
17 and fourth claims, and GRANTED WITHOUT PREJUDICE with respect to
18 Plaintiffs' fifth and seventh claims.  Plaintiffs may amend their
19 fifth and seventh causes of action within 30 days from the date of
20 this Order.

23 IT IS SO ORDERED.

25 Dated: December 1, 2008

_____
UNITED STATES DISTRICT JUDGE